NATALIA JIMÉNEZ DE COBIÁN, Plaintiff and Appellee, *v.*
ANGEL RAMOS, Defendant and Appellant.

No. 7165. Argued March 5, 1937.—Decided April 28, 1937.

*R. Cuevas Zequeira* for appellant.   *C. del Toro Fernández* for appellee.

·MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion ·of the court.

Natalia Jiménez de Cobián brought an action against ·Angel Ramos to recover a certain sum of money, and alleged that on May 1, 1929, the plaintiff delivered to the defendant, ·as a loan, the sum of $455; that on the 9th of the same month, she delivered to him also as a loan the sum of $460; and that in January, 1930, she made another loan to him for the sum of $160.71, without interest. It is further alleged ·that

the defendant has paid on account of said debt the sum of $500.71, and that the balance due the plaintiff is the sum of $575 which has not been paid either in whole or in part, notwithstanding the efforts made by the plaintiff to collect the same.

The defendant admitted that he had received the sums specified in the complaint to be kept by him and to be returned by partial payments as required by the plaintiff; but he averred that the said sums have been totally paid. In his answer he included a demurrer for want of facts sufficient to constitute a cause of action.

The lower court rendered judgment directing the defendant to pay to the plaintiff the sum of $575, with costs. Thereupon the defendant appealed, and he urges in the first place that the trial court erred in overruling the demurrer for insufficiency.

The appellant says that the plaintiff seeks to obtain a judgment condemning the defendant to pay a certain sum of money which it is alleged was delivered to him as a loan, without having fixed a term for the fulfillment of the obligation. It is argued that the complaint is insufficient, because the date of maturity of the obligation should have been alleged and because said date should have been previously fixed by the contracting parties or in default thereof by the courts of justice. As the nonperformance of the obligation does not appear, according to the appellant, the action does not lie, it having been prematurely brought.

The appellant invokes section 1081 of the Civil Code, 1930 ed., according to which "should the obligation not fix a period, but it can be inferred from its nature and circumstances that there was an intention to grant it to the debtor, the courts shall fix the duration of the same. The court shall also fix the duration of the period when it may have been left to the will of the debtor."

We greatly doubt whether the obligation herein is one from which, because of its nature and circumstances, it could

be inferred that it was intended to grant a term to the debtor. The plaintiff alleges that no term was fixed for the performance of the obligation. The defendant in his answer says that it was agreed that he would make partial payments of the money, upon the request of the plaintiff. The evidence shows that the defendant periodically delivered certain sums to the plaintiff at her request, which shows that the defendant felt himself bound to pay whenever the plaintiff so requested. It can not be said that it is the case of a term the duration of which must be fixed by the court. The pleadings and the evidence show that money was delivered to the defendant, without interest, and that the claim was payable upon demand. A pleading defective by reason of the omission of some material allegation, may be aided by the pleading of the adverse party. The rule is that, if the omitted allegation be supplied by the adverse pleading, it is the same as if it were inserted in the party's own pleading. 1 Bancroft's Code Pleading, p. 1035, par. 737.

In the present case the answer served to clarify the facts rather than supply the omission, because to the allegation of the complaint that no date was fixed for the payment of the debt, it adds that the defendant was bound to deliver the money in part payments upon the demand of the plaintiff. In our opinion, it is clear that the obligation to pay the remaining portion of the debt was enforceable upon the request of the creditor. The evidence shows that the defendant made several partial payments to the plaintiff and that the latter had some difficulty in obtaining the final settlement of the amount lastly owed to her. In the case of *Sons of Tomás Pietri v. Vicéns Bros.,* 33 P.R.R. 241, 243, we said that the very fact that it does not appear from the complaint that the debtor was allowed a certain time for payment and that this was not deducible from the nature of the obligation, renders inapplicable section 1095 (sec. 1081, 1930 ed.) of the Civil Code alleged by the appellants to have been violated. But even if this were not so, even if from

the nature and circumstances of the obligation it could be inferred that there was the intention to grant a term to the debtor, we think that in the furtherance of justice and for the sake of speediness in the proceedings, we should adhere to the rule established by this court in *Nicorelli* v. *Ernesto López & Co.*, 26 P.R.R. 49, where it was held that when in an action to recover a debt which has been acknowledged in a public instrument, the court, after considering the evidence, finds that it was intended to set a time for payment but that this was not done, it may, under the provisions of section 1095 of the Civil Code (sec. 1081, 1930 ed.), fix what it considers a reasonable time therefor, it not being necessary to bring an action solely for the purpose of fixing such time. The court in said case analyzes the provisions of the Civil Code, cites Manresa and Scaevola, and says that from their reasoning, particularly that of Scaevola, it appears that the whole question may be disposed of in a single action. And this is as it should be. The defendant in this case owes a certain sum of money to the plaintiff. He is bound to make payment upon demand. Why should the creditor be compelled to prosecute two actions, one to fix the time for payment and another to collect the debt, when both questions can be settled in a single action? We are of opinion that the lower court did not commit the error assigned.

The appellant in his brief discusses jointly the second and fifth assignments, wherein it is claimed that the trial court erred in sustaining the complaint and in denying the motion for a new trial. The appellant contends that the plaintiff lacked a definite basis for the action she brought against the defendant. He points out that the claim in the original complaint was for $950, and that this complaint was subsequently amended and the claim reduced to $575. This discrepancy, according to the appellant, is due to the indubitable fact that Natalia Jiménez de Cobián undertook this litigation with no other basis than the belief that the defendant had no probatory means to show the return of the sums

received from the plaintiff. He adds that said fact is the only possible explanation for the plaintiff totally changing her essential allegations in relation to the amount of the checks, and that she had to reduce her claim as she was shown, during her testimony, checks and receipts of sums that the defendant had paid to the plaintiff or to third persons on her account.

The lower court, in its decision dismissing a motion for new trial, expressed itself as follows:

"The plaintiff in this case is an old lady who openly admitted that she kept no accounts whatsoever, and that if the defendant showed that he had paid or showed checks cashed by her, she was willing to admit that she had received the amounts shown by those checks. The fact that the plaintiff was sometimes incoherent in her testimony and that she made conflicting statements of little import-ance, in our opinion caused by her age and lack of experience in business, does not favor the case of the defendant, since as we said in our opinion in the foregoing paragraphs, the burden of proof was on the defendant and not on the plaintiff to prove the extinction of the obligation, and the court after hearing both sides, gave credit to the witnesses of the plaintiff, deciding the case in her favor. In so deciding we did not fail to consider the testimony of defendant's witness, Teófilo Maldonado, who, although a relative of the plaintiff, was also an employee and an associate of the defendant in his news-paper business 'El Mundo,' but considering the testimony of Mr. Maldonado on its merits, we could not conclude that the partial pay-ment of $500 was made as claimed by the defendant to apply to the account that he had with the plaintiff, since Mr. Maldonado, accord-ing to his testimony, was not in Puerto Rico on the date on which the defendant alleges that he paid to the plaintiff the $500 in ques-tion, so that he could not inform the court from his personal knowl-edge whether the $500 was paid to the plaintiff or to the former wife of the defendant, Natalia Cobián."

The defendant lays much emphasis upon the weighing of the evidence by the trial court, which he claims is erroneous, in sustaining the complaint and in overruling the motion for a new trial. He calls our attention to the following facts, which he regards as forming the gist of the controversy:

This action was commenced on December 22, 1933. When the defendant divorced his wife, he bound himself to pay to her a certain sum of money at the end of the year 1935. Angel Ramos testified that upon the demand of Natalia Jiménez he delivered, in a check in favor of Natalia Cobián, the sum of $500 as a final settlement of the debt that he had with his former mother-in-law. The plaintiff stated that said sum was paid on account of the share of conjugal property of Natalia Cobián, who also testified to the same effect. The defendant Ramos maintains that the logical thing was that this sum should be paid on account of an enforceable obligation, as the one with Natalia Jiménez, and not on account of the obligation contracted to be paid to his wife in the future. It is urged that it would have been in complete harmony with the logic of the arguments to decide the controversy in accordance with the testimony of the defendant, strengthened by the testimony of witness Teófilo Maldonado, who, although it is true that he works for the publishing concern administered by Angel Ramos, is also closely related to the plaintiff by family ties. The trial court, which weighed the evidence, states its reasons to justify its decision notwithstanding the testimony of Maldonado.

As to the question of whether the sum of $500 was paid on account of the obligation contracted with the plaintiff or with Natalia Cobián, the defendant stated that one day both these ladies went to his office to request the delivery of said sum; that offhand he considered as excessive the amount asked to go abroad; that then said ladies resorted to Teófilo Maldonado, who is related to them, who asked him to deliver to them the $500, as it would be better for them to go, and that he had no objection to deliver personally the $500 on account of his debt with Natalia Jiménez. The defendant was subsequently asked whether he recalled what he had testified in the civil case No. 20100, an action of debt brought by Ana Josefa Jiménez Cardona against Angel Ramos, in the

District Court of San Juan, and he answered, according to the transcript of the evidence, thus:

"A. Does the witness recall what he testified in civil case No. 20100, an action of debt, of Ana Josefina Jiménez Carmona *v.* Angel Ramos, in the District Court of San Juan, the trial of which was held on September 19?

"W. If you tell me what I testified . . . .

"A. (Reading) 'She came to my office and said that . . . The attorney interrupts: After being divorced from you?—Answer: Yes, one year and five months thereafter.—A year and five months after the divorce she went to your office?—She came to my office and told me that she wanted to go abroad; she told me that she needed money.—How much do you need?—$500. I want it on my account.' Now, how do you explain that which you testified as a witness when you were not expecting the present action? Why the discrepancy?

"W. What does it say there?

"A. As you now state . . . .

"Defendant—Read to him the whole answer.

"A. (Reading) 'She came to my office and said that . . . The attorney interrupts: After being divorced from you?—Answer: Yes, one year and five months thereafter.—A year and five months after the divorce she went to your office?—She came to my office and told me that she wanted to go abroad; she told me that she needed money. —How much do you need?—$500.00. I want it on my account.— And as I did not have to give her any money, the $500 was given to her, three days before the complaint filed there, to her on account . . . . Here is a check collected on December 4, according to the cancellation of the Royal Bank of Canada. Could you tell me when was the complaint filed?' Why do you state now, in answer to questions put by your attorney, that the $500 was asked by her on doña Natalia's account?

"W. It was delivered on doña Natalia's account, and it does not say there that I delivered them on account of . . .

"A. How do you explain that contradiction?

"Defendant: There is no contradiction.

"Judge: Let us permit him to explain.

"W. I do not see any contradiction. I did not say in my prior testimony that I delivered that, to be charged against her. It does not say there to whom was it chargeable. Say to whom did I say then.

Plaintiff:

"A. I ask in relation to that contradiction, where it says 'I want it on my account.'

"W. That is what she said.

"A. And why do you say now that she asked for her trip . . .

"W. I did not have to give her anything on her account."

The defendant did not explain satisfactorily his prior statements, as compared with the ones he made at the trial of this cause. Previously he had stated that his wife had come to his office and said that she wanted to go abroad and that she needed the sum of $500 on her account, and now he states that the plaintiff and her daughter came to his office to ask for the said sum, to be charged to the account of the former. It is strange that Ramos, who had been required by his wife for an advance of $500 on her account, as he admitted in his previous testimony, should have made the check payable to his wife and charge the amount to the account of Natalia Jiménez. It seems logical that this request of his wife, asking the money for her, would have suggested to him the precaution of protecting himself by issuing the check in favor of the plaintiff, if really he had the intention of settling the balance of the debt contracted with the latter. The fact that he made the check in favor of his former wife shows nothing else than that he wished to please her by advancing the payment of the sum she demanded.

It is also argued by the appellant that the lower court should have taken into account that the defendant was not receiving any material benefit in assigning the $500 to the payment of the account of the plaintiff, because it would not be logical to think that if the debt with Natalia Cobián was embodied in a public instrument and was not to mature until two years later, the delivery of the $500 was made applicable to his future obligation, while the debt owing to Natalia Jiménez de Cobián was presently enforceable. It is true that the defendant was not receiving any material benefit in applying the $500 to the payment of the debt with the plaintiff, but it

is also true that Natalia Cobián was not benefited at all in testifying that the $500 was paid to her and not to Natalia Jiménez. If this were not so, the plaintiff would appear to enrich herself at the expense of her daughter, who would then be barred from claiming a sum which according to the defendant she had never received, as it had been paid to Natalia Jiménez. On the other hand, Ramos would be protected by the testimony of Natalia Cobián to the effect that she had received said sum to apply to her account. For those reasons we feel inclined to conclude that the lower court was justified in making its findings of fact. The errors assigned must be overruled.

In the third and fourth assignment of error it is alleged that the lower court rendered judgment for a sum greater than the one that could be justified by the admissions of the plaintiff herself, and that the action should have been brought before the municipal court, as the claim amounted to $443 only. It is argued that the prayer in the amended complaint is confined to the sum of $575; that according to the allegations, the plaintiff delivered to the defendant the sum of $1,075.71, of which she admitted having received three items of $100 each, divided in monthly payments of $25, and it is contended that if to said $300 is added the sum of $342.71, which the plaintiff admitted having received from the defendant and which the court in its opinion considers as having been paid by him, it results that the total sum paid by the defendant to the plaintiff amounts to $642.71. On those figures the defendant bases his contention that the debt in favor of the plaintiff never could exceed the sum of $433, the lower court having erred in adjudging the defendant to pay $575.

Let us examine the evidence to see if the contentions of the defendant are sound. The lower court found that the defendant had paid to the plaintiff the sum of $342.71, including $100 paid to Teófilo Maldonado, with the consent of the plaintiff. The court also found that the defendant presented

a check to bearer, against the American Colonial Bank, dated February 14, 1930, for the sum of $100, which appears collected by F. Febles & Co., and which, although the defendant alleges that he delivered it to the plaintiff, the latter, however, denies having received, endorsed, or delivered the same to F. Febles & Co.

The plaintiff in her testimony sometimes confuses the amounts which were delivered to her; but if the same is carefully examined it will be seen that it does not contain the admissions attributed to her by the defendant. The plaintiff also stated that all the payments made by the defendant were made in checks, adding that if there was any other check that she did not recall, she was willing to admit its existence. On pages 10 and 11 of the transcript of the evidence the plaintiff admits that the defendant paid, authorized by her, the sum of $100 to Maldonado; that afterwards the defendant told her that he was going to pay the debt in partial payments of $25, that she answered that she could not accept such a thing, that the defendant answered: "Well, all right"; that afterwards she asked for $100 and Mr. Ramos told her that he could not give her that amount at the moment but that he would pay it in amounts of $25, and that thus he paid to her $100; that subsequently she needed again $100 and he again told her that he would give it to her in partial payments of $25, thus paying to her the sum of $100; that in addition he gave her $15 to pay the dentist; that she did not remember having received any other sums, but that if he paid them there must be a check somewhere because the defendant always paid her by check. On pages 23 and 24 of the transcript of the evidence the plaintiff repeats that she asked first for $100 which he paid in partial payments of $25 a month, and later on he gave her another $100 in the same manner; that she accepted the partial payment because the defendant told her that he could not give her the whole amount and that he could not pay the $200 at once. On page 28 of the transcript of the evidence the plaintiff repeats the

same statement that the defendant paid the sum of $200 in monthly payments of $25 each. She was asked why she did not demand the total payment of the account since the defendant did not comply with her demands, and she answered: "If when I asked him for $100 he paid it in partial payments of $25, how was he going to pay had I demanded a larger sum of money? I would have been forced to receive the money in that manner and I could not accept that." She had already stated, at page 26, that each time she asked money from the defendant he answered that he could not pay, begging for more time to pay, and that that was the reason why she asked for the money; that when she thought of going abroad, she said: "I must collect somehow," and therefore she did this. On page 28 of the transcript of the evidence, the plaintiff stated that she recalled having received four checks of $100, and said: "I received, as far as I remember, four checks of $100 each. I have already stated that one was for me, another for Maldonado, and another was issued to be delivered to me in monthly installments of $25."

The foregoing statements show that the plaintiff was mistaken, since although she referred to four checks, she only enumerated three: the one paid to Maldonado with her permission, another paid to her, and a third one which was paid to her in partial amounts of $25.

As we have said before, the court, in the statement of the case, enumerates the checks made to the order of the plaintiff, including that of Maldonado, and says that they give a total amount of $342.71. To this amount the defendant adds three items of $100 each, divided in monthly payments of $25, which the plaintiff admitted having received. These figures are not justified by the evidence. Besides, the defendant could have presented all the checks made to the order of the plaintiff to show that he had paid a larger sum than the one admitted in the amended complaint, according to the evidence introduced. He failed to do so, and now he claims that the court committed error in weighing the

evidence. The lower court concluded by saying with regard to both the check for $500, which according to the defendant was paid to be applied to the obligation contracted with the plaintiff, and the check for $100, which appears indorsed by F. Febles & Co., that it had not been proved that these amounts were paid to the plaintiff. It added that, therefore, the defendant had not shown the total discharge of the obligation, and that, although according to the evidence he appeared to owe the plaintiff a larger sum than the one claimed by her, however, as the plaintiff only prayed for the recovery of $575, it could not render judgment for an amount greater than the one claimed by Mrs. Jiménez. We think that the lower court has not committed the errors assigned.

Finally, it is contended that the lower court erred in imposing costs on the defendant. After examining the evidence introduced, we do not feel inclined to modify the award made by the court *a quo* in the exercise of its discretionary powers.

The judgment appealed from must be affirmed.